USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 6/14/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

-against-

MARION TINGMAN,

Defendant.

11-Cr-1040 (SHS)
18-Cv-2566 (SHS)

OPINION & ORDER

SIDNEY H. STEIN, U.S. District Judge.

Petitioner Tingman was convicted in July 2013 of conspiracy to distribute 280 grams or more of crack cocaine as well as possession of a firearm in furtherance of that narcotics conspiracy. He was subsequently sentenced to 180 months' imprisonment, the mandatory minimum sentence. That conviction was affirmed on appeal. Tingman subsequently brought this petition *pro se* pursuant to 28 U.S.C. § 2255 to vacate his sentence on the grounds that he was denied effective assistance of counsel in three respects. Tingman's motion should be denied because he has failed to satisfy the *Strickland* test for all three claims. *Strickland v. Washington*, 466 U.S. 668, 687-88, 693 (1984).

I. BACKGROUND

A. Tingman's Drug Conspiracy

Tingman was one of thirteen defendants indicted in *United States v. Bastian*, No. 11-Cr-1040. The government charged Tingman with being the leader of a cocaine and crack distribution ring in Monticello, New York. As established at trial, between 2006 and 2011, Tingman recruited co-conspirators and they regularly processed, bagged, distributed, and sold powder cocaine and crack cocaine. (Trial Tr. at 30, 42, 162-77, Docs. 184, 186.) They also protected themselves and their drug operation with a shotgun. (Trial Tr. at 243-47, Doc. 186.)

1

## B. Tingman's Conviction, Sentence, and Appeal

Superseding Indictment S2 charged Tingman in two counts. Count One charged him with conspiracy to distribute powder cocaine and 280 grams or more of crack cocaine, in violation of 21 U.S.C. § 846. Count Two charged Tingman with possessing a firearm in furtherance of a narcotics conspiracy, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 2.

Trial commenced on July 9, 2013 and the jury returned a guilty verdict against Tingman on both counts on July 16, 2013. Because Count One carried a mandatory minimum sentence of ten years' imprisonment and Count Two carried a consecutive, mandatory minimum sentence of five years' imprisonment, Tingman's conviction resulted in a mandatory minimum sentence of fifteen years' imprisonment, to which he has been sentenced.

Prior to sentencing, the Presentence Investigation Report ("PSR") found that Tingman was responsible for the distribution of 18 kilograms of crack over the duration of the offense, which, after applying the Drug Quantity Table in effect at the time, resulted in a base offense level of 38. PSR ¶ 45; *see* U.S. Sentencing Guidelines Manual § 2D1.1(C)(1) (U.S. Sentencing Comm'n 2012) ("U.S.S.G.") (offense level of 38 applies where drug quantity is 8.4 kilograms or more of cocaine base, i.e., crack).[1] Since Tingman was a leader of the offense that involved more than five participants, the report assessed an increase in the offense level by four leadership points, resulting in a total offense level of 42. PSR ¶¶ 48, 50. *See* U.S.S.G. § 3B1.1(a) ("If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels"). Based on an offense level of 42 and a Criminal History Category of I, Tingman's Guideline range was 420 months to life

---

[1] In 2019, at least 8.4 KG but less than 25.2 KG of cocaine base would result in a base offense level of 36.

2

imprisonment. PSR ¶ 86. Probation recommended a sentence of 420 months imprisonment. PSR at 20.

Sentencing took place on May 19, 2014 and this Court sentenced Tingman to 15 years' imprisonment, which is the mandatory minimum sentence required by statute. Judgment was entered on May 20, 2014. Tingman appealed to the Second Circuit, which affirmed his conviction by summary order. *United States* v. *Tingman*, 642 Fed. App'x 12 (2nd Cir. Mar. 14, 2016).

### C. Tingman's Section 2255 motion

Tingman filed this motion on March 16, 2018 to vacate his sentence of 180 months' imprisonment. Tingman claims that his trial counsel was ineffective for three reasons. (Mot. under 8 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("Pet'r's Mot."), Doc. 410.) First, Tingman contends that his trial counsel was ineffective by failing to "request a special verdict form to establish the quantity of drug petitioner was responsible for distribution." (*Id.* at 5.) Second, Tingman argues that the evidence did not establish that he was responsible for 8.9 kilograms of crack for which he was sentenced to 180 months. (*Id.*)[2] Third, he claims that his counsel was ineffective for failing to object to the four point enhancement for his leadership role when "the evidence does not support such leadership role." (*Id.*) Each point is meritless.

## II. DISCUSSION

### A. *The Applicable Legal Standard*

A prisoner may move to vacate, set aside, or correct his sentence if "the sentence was imposed in violation of the Constitution or laws of the United States, or that the

---

[2] Although Tingman refers to "8.9" kilograms of crack cocaine in his motion, he is clearly referring to the 8.4 kilograms supported by considerable evidence at trial.

3

court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).

To establish ineffective assistance of counsel, Tingman must show (1) that his attorney's representation fell below "an objective standard of reasonableness" under "prevailing professional norms" and (2) that he was prejudiced as a result of the allegedly defective conduct. *Strickland*, 466 U.S. at 687-88, 693. Tingman must affirmatively establish such prejudice by showing a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. With respect to sentencing, Tingman must show a reasonable probability that "but for counsel's substandard performance, he would have received a less severe sentence." *Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013).

## B. Tingman's Claim Regarding the Special Verdict Form is Meritless

Tingman's first claim is that defense counsel failed to request a special verdict form regarding drug quantity. (Pet'r's Mot. at 5.) He asserts that his counsel's failure to make such a request left him in limbo, "not knowing exactly how the jury arrived at its determination and what drug amount has been proven beyond a reasonable doubt." (Pet'r's Reply Mem. of Law to the Gov't's Mem. in Opposition ("Pet'r's Reply Mem.") at 4, Doc. 454.)

In fact, however, a special verdict form was agreed to by the parties and submitted to the jury for its determination of the drug weight. (Trial Tr. at 622, Doc. 192.) As this Court explained, the special verdict form asked the jury whether the drug weight was "less than 28 grams, then 28 grams or more but less than 280 grams and then 280 grams or more." (*Id.*) That is, as to Count One, the jury was asked to find whether the amount of crack cocaine that Tingman was personally involved with or was reasonably foreseeable to him as part of the conspiracy was 280 grams or more, at

4

least 28 grams but less than 280 grams, or less than 28 grams. (Gov't's Mem. of Law in Opposition to Pet'r's Mot. ("Gov't's Mem.") at 8, Doc. 441.) Using the special verdict form, the jury unanimously found that the drug weight was 280 grams or more. (Trial Tr. at 791.) Since the defense lawyer did not fail to request a special verdict form to establish the drug quantity, and in fact a special verdict form was agreed to by the parties and submitted to the jury, Tingman has failed to fulfill his burden to establish this ineffective assistance of counsel claim.

### C. *Tingman's Claim Regarding Drug Weight is Meritless*

Tingman's second claim is that evidence did not indicate that he was responsible for 8.4 kilograms of crack attributed to him and for which he was sentenced to 180 months. However, in the government's sentencing memorandum, it argued that Tingman was responsible for the distribution of approximately 19.5 kilograms of crack with respect to only one of the defendant's co-conspirators, Joan James. (Gov't's Sentencing Mem. at 3, 4, Doc. 218.) Even using a more conservative estimate, the government urged that Tingman was responsible for at least 9.75 kilograms of crack cocaine, well in excess of the 8.4 kilogram threshold at issue here. (*Id.* at 4.)

The government's calculation was as follows: James testified that from the summer of 2006 through the end of 2007, she received anywhere from 25 to 75 grams of crack from Tingman per week, and that from around 2008 until 2011, she received anywhere from 50 to 150 grams of crack from the defendant per week. (Trial Tr. at 27, 28, 31-32.) The government first took the averages of these numbers and made the following calculations: (1) for the time period from the summer of 2006 through the end of 2007, which spanned roughly 78 weeks, James received approximately 50 grams of crack from the defendant per week, for a total of approximately 3.9 kilograms of crack during that time period; and (2) for the time period from the beginning of 2008 through the end of 2010, which spanned roughly 156 weeks, James received approximately 100

grams of crack from the defendant per week, for a total of approximately 15.6 kilograms of crack during that time period. (Gov't's Sentencing Mem. at 3, 4.) Adding these two time periods together results in a total of approximately 19.5 kilograms of crack, which the government asserted could be attributable to the defendant. (*Id.* at 4.)

Alternatively, the government used a more conservative estimate by taking the lower end of the numbers testified to by James, resulting in the following calculations: (1) for the time period from the summer of 2006 through the end of 2007, which spanned for roughly 78 weeks, James received at least 25 grams of crack from the defendant per week, for a total of at least 1.95 kilograms of crack during that time period; and (2) for the time period from the beginning of 2008 through the end of 2010, which spanned for roughly 156 weeks, James received at least 50 grams of crack from the defendant per week, for a total of at least 7.8 kilograms of crack during that time period. (*Id.*) Adding the two time periods together results in a total of at least 9.75 kilograms of crack, which is over the 8.4 kilogram threshold that mandates a base offense level of 38. (*Id.*)

As noted above, the PSR calculated a drug weight of 18 kilograms, and Tingman's counsel actively challenged this finding, both in his sentencing submission and at sentencing. (Def.'s Sentencing Mem. at 2, Doc. 223; Sentencing Tr. at 6, Doc. 284.) This Court rejected the 18 kilograms calculation accordingly, giving Tingman "the benefit of the doubt," and ruled that Tingman was responsible for distribution of "at least 8.4 kilograms of crack." (Sentencing Tr. at 9.) Defense counsel again actively objected to this calculation. (*Id.* at 10.) Thus, defense counsel's representation did not fall below an objective standard of reasonableness.

In addition, the quantity of drug found by the court could not possibly have prejudiced Tingman because this Court imposed the statutory mandatory minimum sentence. Even if this Court had found lesser drug weight, it could not have given

6

Tingman a lower sentence. Therefore, Tingman was not prejudiced as a result of the allegedly ineffective assistance of counsel because he cannot show that "but for counsel's substandard performance, he would have received a less severe sentence." *Gonzalez*, 722 F.3d at 130. Tingman's claim of ineffective assistance of counsel regarding drug weight is meritless.

### D. *Tingman's Claim Regarding the Leadership Enhancement is Meritless*

Tingman's third claim is that his counsel was ineffective for failing to object to a four point enhancement for his leadership role because "the evidence does not support such leadership role." (Pet'r's Mot. at 5.) However, the testimony at trial showed beyond peradventure that Tingman was the organizer and leader of a drug trafficking organization that involved at least five participants. Furthermore, defense counsel *did* object to the leadership points both in writing and at sentencing, and the Court rejected that position and imposed the four point enhancement. (Pet'r's Sentencing Mem. at 2; Sentencing Tr. at 4-5.)

Tingman started the conspiracy with Frank Williams and Messiah Lockhart in 2006 when Tingman proposed that they "all chip in together, me, him, and Messiah, and we sell drugs together." (Trial Tr. at 163.) As the business grew, Tingman recruited other dealers to distribute crack, including Joan James, two people who Williams knew as "Wash" and "E," and Tingman's cousin, Jasaan Bastian. (*Id.* at 30, 40-42, 176.) These people obtained drugs from Tingman, sold the drugs for Tingman, and gave the majority of the profits to him. (Trial Tr. at 31-34; *see also* Trial Tr. at 177.) Although Tingman asserted that none of the witnesses testified explicitly that he was "the leader" (Pet'r's Reply Mem. at 4), people clearly looked to Tingman for leadership as well as for drugs.

Defense counsel first objected to the leadership points in the defendant's Sentencing Memorandum. (Def.'s Sentencing Mem. at 2.) When the parties appeared

for sentencing on May 19, 2014, defense counsel again argued that Tingman was not an organizer or leader of the conspiracy. (Sentencing Tr. at 4-5.) Thus, defense counsel's representation was adequate.

In addition, since the Court imposed the mandatory minimum sentence of 15 years, the leadership points did not an impact on Tingman's sentence and there was no prejudice against Tingman. Therefore, Tingman's claim regarding the leadership enhancement is meritless.

### III. CONCLUSION

For the reasons set forth above, Tingman's motion to vacate his sentence is denied. Because Tingman has not made a substantial showing of the denial of a constitutional right, a certificate of appealability should not be issued. 28 U.S.C. § 2253(c)(2); *Lucidore v. N. Y. State Div. of Parole*, 209 F.3d 107, 111-13 (2d Cir. 2000). In addition, the Court certifies that any appeal from an order in this Court would not be in good faith. *See Coppedge v. United States*, 369 U.S. 438, 445-46 (1962).

Dated: New York, New York
June 14, 2018

SO ORDERED:

Sidney H. Stein, U.S.D.J.